IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KENDRICK C. STORY                                                                                    PLAINTIFF

      v.                          Civil No. 1:07-cv-01031

JOE STRICKLAND, Chief
Deputy, Ouachita County Sheriff's
Office; MR. NORWOOD, Ouachita
County Sheriff's Office; and
CHRIS GILL, Deputy, Ouachita
County Sheriff's Office                                                                              DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Kendrick C. Story, (hereinafter "Story" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

The events at issue in this lawsuit occurred while Story was incarcerated at the Ouachita County Detention Facility. Story contends his constitutional rights were violated in the following ways while he was incarcerated there: (1) he was verbally threatened; and (2) he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 27). To assist Story in responding to the summary judgment motion, I propounded a questionnaire (Doc. 30). Story filed a timely response to the questionnaire (Doc. 31). The summary judgment motion is now ready for decision.

-1-

### 1. Background

Story was booked into the Ouachita County Detention Facility (OCDF) on November 20, 2006. *Plaintiff's Response* (Doc. 31) (hereinafter *Resp.*) at ¶ 1. He remained incarcerated there until released to the Arkansas Department of Correction (ADC) on June 12, 2007. *Id.* at ¶ 2. On May 1, 2007, he had been sentenced to a term of imprisonment on a theft of property charge. *Id.* at ¶ 3.

Between November 20, 2006, and December 13, 2006, Story requested no medical care and filed no grievances. *Resp.* at ¶ 4. On December 13th, Story requested medical care because of ear pain. *Id.* at ¶ 5. He was taken to the emergency room at Ouachita County Medical Center and seen by Dr. Stephen Tabe. *Id.* at ¶ 6(A).

Story complained of a knot on his right ear lobe. *Defendants' Exhibit* 2 (hereinafter *Defts' Ex.*) at pages 3-7. Dr. Tabe examined him but did not prescribe any medication or do any procedures. *Id.* Dr. Tabe indicated when Story was "released" he should follow up with an Ear, Nose, and Throat specialist. *Id.* He also said Story should return to the emergency room in the case of an emergency. *Id. See also Resp.* at ¶ 7(C). According to the officer who accompanied Story to the hospital, Dr. Tabe indicated nothing could be done except to give Story Aspirin. *Defts' Ex.* 5.

On December 13th, Story submitted his first grievance. *Resp.* at ¶ 8. He stated he was having problems with his ear and still had gotten nothing done. *Id.* He indicated he had been to the doctor but the doctor said he thought Story needed to go to an ear specialist and there was nothing the doctor could do for Story. *Id.* Since Story was in their custody, he stated it was up to them to arrange for him to see the ear doctor. *Id.*

In response, someone wrote: "Just went and took you to the ER." *Defts' Ex.* 4 at page 1. Story, however, indicates he did not receive a written response to the grievance. *Resp.* at ¶ 9.

Instead, he states Officer Chris Gill orally responded that Story had just been taken to the hospital. *Id.*

On December 13th, Story submitted a second grievance. *Resp.* at ¶ 10. He stated that he had filled out a request to be seen by the doctor on Monday. *Id.* He indicated Sgt. Baker was on shift and had seen his ear. *Id.* He stated Baker said it had to be approved by Captain Norwood for Story to go to the hospital but he said it shouldn't take three or four days to get approval. *Id.* Story stated his family was talking to a lawyer and he needed help because he was in pain. *Id.*

In response someone wrote that Story must fill out a medical request for all medical needs. *Defts' Ex.* 4 at page 2. Story denies that he received this written response. *Resp.* at ¶ 11. However, he states he always filled out a medical request as well as a grievance form to try to get medical treatment for his problem. *Id.*

On December 14th at approximately 1:00 p.m. Jailor Chris Gill locked Story down. *Defts' Ex.* 5. Gill's narrative provides as follows:

> On December 13 I took inmate Story to the hospital to get his ear checked out. The doctor said it was non-emergency and there was nothing we could do except give him aspirin. The doctor also wrote on the hospital receipt that when he got out he would need to see a specialist. Every since inmate Story was told that he has been disorderly and rude. So when he started banging I went up there and told him that if he didn't stop banging I was going to lock him up. He said he didn't care and I couldn't make him do anything. So when Sgt. Bolton came up he asked him calmley to come out of the cell. But inmate Story refused. Story stated if we touched him it would be bad for all of us. So I called for more assistance on the radio. After Story saw me on the radio he started complying with us. With the assistance of Capt. Norwood, Sgt. Bolton, and Deputys Steve Stanley, Adam Laduke, Clint Russell and Steve Giovouni, we locked inmate Story down.

*Defts' Ex.* 5.

Story indicates he had to hit the wall to get the jailor to come upstairs to the third floor because there was no buzzer to get the jailer's attention. *Resp.* at ¶ 14(A). However, he denies having said anything to Gill like reported in the narrative. *Id. at* ¶ 14(A) & ¶ 17. Instead, he states he was trying to tell them what was wrong with him, asked why he was being locked up, and trying to comply with their orders. *Id.* at ¶ 15-¶ 18.

Story concedes Gill accompanied him to the hospital on December 13th. *Resp.* at ¶ 14(B). However, he denies that the doctor made the statements attributed to him by Gill. *Id.* In fact, Story indicated the "doctor never said nothing like that." Story questions "what kind of doctor would tell someone to go get some help when they got out of jail." *Id.*

Story indicates he suffered bad ear pain for approximately three weeks until it started to discharge out of his ear and slowly stopped. *Resp.* at ¶ 25. He states the ear hurt every day and he had a lot of discharge. *Id.* According to Story, several weeks after his ear discharged all the fluid the condition cleared up. *Id.* at ¶ 27.

According to Defendants, between December 14, 2006, and June 12, 2007, Story submitted several grievances but no medical requests and no grievances about medical conditions or lack of medical care. *See* Doc. 29 at ¶ 17. Story, however, contends he filed several grievances as well as medical requests trying to be seen by an Ear, Nose, and Throat doctor concerning his ear pain. *Resp.* at ¶ 20. Story was told if he submitted medical requests or grievances during this period of time to attach copies to his summary judgment response. Story did not attach copies of the grievances or medical requests and did not explain why he did not attach the documents.

After he was locked down on December 14th, Story maintains Captain Norwood threatened him. *Resp.* at ¶ 24. Story states he was standing in the doorway of his one man cell trying to talk

to Norwood when he issued the threat. *Id.* Norwood was standing in front of Story's cell door and the door was open. *Id.* According to Story, he asked if he could talk to Norwood and Norwood replied that Story was not going to be able to talk because "he was going to kick his f------ teeth out." *Complaint* (Doc. 1) at pages 5-6. Story asserts Norwood also said the only way Story was going to get medical attention was if he was lying on the floor "d— near dead." *Id.*

When Norwood threatened Story, he moved to the back of the cell to get away from Norwood. *Id.* Norwood did not touch Story but his words were enough to let Story know he meant business. *Id.* As a result, Story maintains he suffered mental and emotional distress. *Id.* Story states he feared for his life. *Id.*

Story was given an intake physical at the ADC on June 13, 2007. *Resp.* at ¶ 21. Story did not complain of any ear pain, ear condition, or abnormality of his ear. *Id.* at ¶ 22. The physical examination of Story's ears was noted to be normal. *Id.* at ¶ 23. By the time he was transferred to the ADC, Story indicates his ear was no longer bothering him. *Id.* at ¶ 27.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants have now moved for summary judgment. Defendants deny they engaged in any conduct that resulted in Story's constitutional rights being violated. First, Defendants maintain that verbal threats and abuse are not actionable under 42 U.S.C. § 1983. Second, Defendants contend Story was not denied adequate medical care.

Story argues that Norwood's threats placed him in fear of his life and caused him severe mental anguish. Moreover, he maintains all the named Defendants showed deliberate indifference to his medical condition when they failed to get him proper treatment for his ear condition and failed to arrange for him to be seen by an Ear, Nose, and Throat specialist despite the recommendation of Dr. Tabe.

#### A. Verbal Threats

Prison conditions claims include threats to an inmate's health and safety. *See Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted). In general, "[v]erbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language do not state a claim of constitutional dimension. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims

of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).

While exceptions to this general rule have been recognized even when no physical harm has been suffered, the exceptions have been limited to situations where a "state official engaged in a 'brutal' and 'wanton act of cruelty.'" *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). For example, in *Burton v. Livingston*, 791 F.2d 97, 99-100 (8th Cir. 1986), the officer pointed a gun at Burton's head and told him to run so the officer would have an excuse to shoot him. *Id.* at 99. The Eighth Circuit held that Burton had stated a claim of constitutional dimension. *Id.* It held that "a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his custodians." *Id.* at 100.

Whereas in *Hopson v. Fredericksen*, 961 .2d 1374, 1378 (8th Cir. 1992), the Eighth Circuit held insufficient for Eighth Amendment purposes "the allegation that officers seated in the front seat of a patrol car threatened to knock out the back-seat occupant's teeth if he did not start talking." *Irving*, 519 F.3d at 449 (*citing Hopson*, 961 F.2d at 1378). In discussing the *Hopson* case in *Irving*, the Court noted the officers did not threaten Hopson's life, raise a fist or weapon, or take any action to make the threat seem credible. *Irving*, 519 F.3d at 449.

Similarly, in this case, Norwood did not threaten Story's life, did not physically threaten him with his fists or a weapon, and did not take any action to make the threat seem credible. Further, the

-7-

records before the court establish Story had been taken to the emergency room the day before for medical treatment. Clearly, the threats alleged to have been made by Norwood in this case do not rise to the level necessary to state a claim of constitutional dimension. Defendants are entitled to summary judgment on this claim.

### B. Denial of Medical Care

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross

negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

In this case, Story maintains the Defendants exhibited deliberate indifference to his serious medical needs when they did not get him further medical attention for his ear following his trip to the emergency room for the condition on December 13th. He maintains he should have been taken to the Ear, Nose, and Throat specialist.

Contrary to Story's assertion, there is no indication on the emergency room records that Dr. Tabe referred Story to an Ear, Nose, and Throat doctor or indicated to jail officials that they needed to arrange for Story to have additional treatment. *Defts' Ex.* 2 at page 5. The discharge instructions on page five are blank and contain no referral to a doctor and no mention of the necessity of the immediate scheduling of a follow-up examination. It is only in the special instructions contained on page six that a notation is made for Story to follow up with an "ENT when you are released." *Id.* at page 6. As noted previously, Dr. Tabe performed no procedures, prescribed no medication, and did not direct the scheduling of any follow-up examinations. *Id.* His final diagnosis contains codes 782.2 which is the code for localized superficial swelling mass or lump and V71.89 which stands

for observation or admission without the need for further medical care. *See e.g.,* www.icd9data.com (accessed 1/14/2009).

There is therefore no genuine issue of fact as to whether Defendants acted with deliberate indifference when they failed to schedule Story for a follow-up appointment with the specialist following his December 13th visit with Dr. Tabe. Dr. Tabe did not recommend, or direct, that such an appointment be scheduled immediately or while Story was in Defendants' custody.

The only requests Story made for further treatment of his ear that appear in the record were made the same day he was seen by Dr. Tabe and the following day, *Defts' Ex.* 4 and *Defts' Ex.* 5. There is no indication that Story's medical condition had changed when he made these requests or that Defendants ignored an escalating situation with respect to Story's health.

Although Story asserts he submitted additional requests for medical treatment between December 14, 2006, and June 12, 2007, *see Resp.* at ¶ 20, despite having been specifically directed to, he did not provide the court with copies of these requests or explain why he did not have copies of the requests. *Id.* He did not provide the court with any specific information about when the requests were submitted, what he said in the requests, or who responded to the requests. *Id.*

"Deliberate indifference is equivalent to the criminal law standard of recklessness–a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007)(internal quotation marks and citations omitted). In this case, Defendants had taken Story to the emergency room for treatment of the ear condition, Dr. Tabe had not performed any procedures or provided any medications. He indicated Story should see a specialist "upon release." On the record before us, we do not believe there are any genuine issues of fact as to

whether Defendants exhibited deliberate indifference to Story's serious medical condition when they did not arrange for further treatment for Story's ear condition.

### 4. Conclusion

For the reasons stated, I recommend that the Defendants' motion for summary judgment (Doc. 27) be granted and this case be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 29th **day of January 2009.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE